1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   Lia D. Mollica,                          No. 2:19-cv-02017-KJM-DB
12                    Plaintiff,               ORDER
13          v.
14   County of Sacramento, et al.,
15                    Defendants.
16

17          Plaintiff Lia Mollica brings this action against Sacramento County and its employees for
18   injuries she sustained while incarcerated in the County's jail.  Defendants move for summary
19   judgment on all of plaintiff's claims.  For the reasons below the court **grants the motion in part**
20   **and denies the motion in part.**
21   **I.      EVIDENTIARY OBJECTIONS**
22          Defendants object to plaintiff's evidence.  Objs., ECF No. 85-3.  Without providing any
23   explanation, defendants make broad generalized objections on grounds of hearsay, lacking
24   foundation, authentication or personal knowledge, and relevancy.  *See generally id.*  The court
25   finds these objections lack merit.
26          As to relevancy, the court does not rely on irrelevant evidence when considering motions
27   for summary judgment.  The relevancy objections are redundant and thus are overruled.  *See*
28   *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[O]bjections to

evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.").

The court also overrules the objections on the grounds of hearsay, lacking foundation, authentication or personal knowledge.  Generally, the admissibility of evidence at summary judgment is governed by different rules and different motivations than at trial.  At summary judgment, Federal Rule of Civil Procedure 56 allows objections to evidence when "the material cited . . . cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  As this language suggests, at summary judgment, the propriety of evidence depends not on its form, but on its content.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Additionally, an objection's context is crucial.  A party who opposes summary judgment can prevail by demonstrating "a question of fact remains for trial," so courts commonly "treat[] the opposing party's papers more indulgently than the moving party's papers."  *Burch*, 433 F. Supp. 2d at 1121 (quoting *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)).  District courts have discretion "to be somewhat lenient" if the opposing party's evidence falls short of the "formalities of Rule 56."  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993); *see also Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) ("[C]ourts generally are much more lenient with the affidavits of a party opposing a summary judgment motion.").  For example, on review of summary judgment, the Ninth Circuit has considered the hearsay contents of a diary whose substance could be admissible in another form at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).  Authenticity problems may also be excused if those problems could likely be cured.  *See, e.g., Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1163–64 (E.D. Cal. 2015).

The court finds the contents in the medical records, journal, emails and grievance forms may be admissible in another form at trial.  For example, the contents may fall under hearsay exclusions and exceptions under Federal Rules of Evidence 801 and 803, including then-existing mental, emotional, or physical condition, opposing party statements, statements made for medical diagnosis or treatment, records of regularly conducted activity and recorded recollection.  *See,*

1   *e.g.*, Fed. R. Evid. 801(d)(2), 803(3)–(6).  These documents could also be properly authenticated

2   at trial.  *See* Fed. R. Evid. 901.  Moreover, defendants have not given the court any specific

3   reason to doubt the authenticity of the documents they challenge.  *See* Objs.; *see also Del Campo*

4   *v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1123 n.10 (N.D. Cal. 2010)

5   ("Since Defendants do not specify any reason to doubt the authenticity of documents that they

6   themselves produced in discovery, the Court finds the documents properly authenticated under

7   Fed. R. Evid. 901.").  Accordingly, **defendants' objections are overruled.**

8   **II.   MOTION TO STRIKE**

9       Defendants move to strike plaintiff's Exhibits N, O and P for violating a discovery only

10  Protective Order and potentially violating third parties' privacy rights.  Mot. Strike at 3, ECF No.

11  85-3.[1]  Defendants also move to strike the declaration of Edward Marin for plaintiffs' failure to

12  disclose during initial disclosures.  *Id.*  The court already has ordered plaintiff to file a redacted

13  version of Exhibit O, *see* Mins. Mot. Hr'g, ECF No. 88; Ex. O, ECF No. 89, and has stricken

14  Exhibits N and P from the record.  *See* Order Strike, ECF No. 90; Min. Order, ECF No. 92.

15  Additionally, the court does not rely on the Marin declaration in deciding this motion.  *See In re*

16  *Clark*, 662 F. App'x 544, 548 n.3 (9th Cir. 2016) (unpublished) (denying party's request to strike

17  declaration as moot because court did not rely on it).  Accordingly, the motion to strike these

18  documents is **denied as moot**.

19  **III.   BACKGROUND**

20      The court finds the following facts are supported by the record and construes them in the

21  light most favorable to plaintiff as required.  On May 4, 2019, plaintiff was arrested for violating

22  the terms and conditions of the Sacramento County Sheriff's Department's work release program.

23  First Amended Complaint (FAC) ¶ 13, ECF No. 20; Defs.' Reply to Pl.'s Resp. to Statement of

24  Undisp. Facts (SUF) ¶ 2, ECF No. 85-2; Defs.' Resp. to Pl.'s Statement of Disp. Facts (SDF) ¶ 1,

25  ECF No. 85-1.  On May 8, 2019, while plaintiff was incarcerated at Sacramento County Main

26  Jail, plaintiff fell from her bunk and injured her foot.  SUF ¶¶ 3–4; *see* Arrest Docs. at 8, Merin

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system unless otherwise noted.

Decl. Ex. A, ECF No. 91; Medical Records at 59, Merin Decl. Ex. B.  An orthopedic technician placed plaintiff in a splint and fitted her with crutches.  Medical Records at 59.  The next day, a radiologist x-rayed plaintiff's foot and a doctor who inspected the x-ray, documented "[p]robable calcaneal fracture," and ordered "Orthopedic Surgery Consult."  *Id.* at 57.  On May 13, 2019, plaintiff was transferred to the Rio Cosumnes Correctional Center (RCCC).  SUF ¶ 5.

Between May 10 and May 15, plaintiff submitted various kites, or inmate message requests, and grievance forms noting her pain and requesting medical attention and accommodations.  *See generally* Medical Records; Journal, Merin Decl. Ex. G; Grievance Forms, Merin Decl. Exs. H & I.  She reported severe pain, discoloring in her foot, and increased swelling.  *See, e.g.*, Medical Records at 49, 55.  Medical staff who treated plaintiff recorded she had a swollen and bruised foot, Medical Records at 49, and had "ortho surgery consult pending," *id.* at 51.  One doctor observed "significant swelling and diffuse dark ecchymosis[2] throughout bottom of foot, and upward," and noted there were "mult discussions with CM" to discuss whether to wait for referral to "ortho."  *Id.* at 46.

During this time, plaintiff requested an ADA (Americans with Disabilities Act) accessible shower.[3]  *Id.* at 54.  A nurse recorded plaintiff "slipped and fell during shower" and needs "medical shower accommodation and Splint wrap due to safety reason[s]."  *Id.* at 53.  However, when plaintiff asked an officer to use the medical shower, the officer informed her she could use a shower chair in the regular shower instead.  Journal at 191–92.  Plaintiff also reported she fell "twice because [she had] been told to hurry up," Grievance Forms at 238, and was disciplined for creating straps on her shower bag to help her carry her belongings, *see id.* at 239; Mollica Dep. 33:9–17, Merin Decl. Ex. F.[4]

---

[2] "Ecchymosis is the medical term for the common bruise."  *Brickey R. v. Saul*, No. 19-4953, 2020 WL 1914898, at *5 n.7 (C.D. Cal. Apr. 20, 2020) (quoting *Understanding Ecchymosis*, Healthline, https://www.healthline.com/ health/ecchymosis).

[3] The court understands an ADA accessible shower to mean showers that are in compliance with the Americans with Disabilities Act.

[4] The court cites to the deposition transcript pages for this deposition.

While plaintiff was in the County's custody, defendant Tammy Morin was the medical director for Correctional Health Services for County Department of Health Services.  SUF ¶ 1; Morin Dep. 11:11–16; 22:14–19.[5]  Her duties included organizing physician medical care for the inmate patient population.  Morin Dep. 16:17–22.  She was plaintiff's "authorizing provider," SDF ¶ 48; Medical Records at 68, and in her deposition, Dr. Morin recollected signing an order for plaintiff "[t]o get a repair of the left calcaneal fracture."  Morin Dep. 28:15–29:7.

Defendant Nancy Gallagher, a nurse, was plaintiff's case manager.  SUF ¶ 7; Medical Records at 91.  Case managers help inmates obtain specialty care services.  Morin Dep. 23:16–21, 24:9–23.  As a case manager, Nurse Gallagher's duties included facilitating an appointment between plaintiff and an orthopedic specialist at San Joaquin General Hospital (SJGH). Gallagher Dep. 15:13–19.[6]  Sacramento County has a contract with SJGH to "use their clinics like orthopedics, and that's where all of [their] patients go."  Id. 37:3–6.  The County does not have contracts with any other facility for orthopedic care.  Id. 37:7–10.  SJGH provides appointment dates and coordinates with the case manager to schedule appointments.  Morin Dep. 41:7–18.  In other words, the County cannot schedule patients for surgery unless SJGH provides appointments.  Id. 41:14–18; see Gallagher Dep. 23:6–25.  Although Nurse Gallagher was plaintiff's case manager, she never saw plaintiff.  Gallagher Dep. 21:14–15.  However, she was plaintiff's "signing provider," Medical Records at 68, and knew "Ms. Mollica was sitting almost every single day in sick call or whatever and she was asking about [her medical treatment]," Gallagher Dep. 29:14–20.

On May 15, 2019, Dr. Morin and Nurse Gallagher authorized plaintiff to be seen by the Emergency Department at SJGH.  See SUF ¶ 13, SDF ¶ 38; Medical Records at 44; Morin Dep. 30:1–6.  At the hospital, plaintiff was x-rayed again, and the radiologist observed an impression of a calcaneal fracture and soft tissue swelling.  Medical Records at 73.  A doctor noted plaintiff

---

[5] For the Morin deposition, the court cites to transcript pages excerpted in Whitefleet Decl. Ex. B, ECF No. 79-3, and Merin Decl. Ex. C.

[6] For the Gallagher deposition, the court cites to transcript pages excerpted in Whitefleet Decl. Ex. A, and Merin Decl. Ex. D.

"needs an orthopedic evaluation," *id.* at 74, and observed "[l]arge ecchymosis and edematous[7] foot," *id.* at 75.  The doctor instructed her to follow up with her orthopedic physician within one week and with her primary care provider within three to five days.  *Id.* at 75.  Plaintiff testified that the doctor at the hospital informed plaintiff she needed surgery "as soon as possible."  Mollica Dep. 30:19–31:18.  Nurse Gallagher noted the hospital recommended plaintiff see a doctor the following week for surgical evaluation.  Medical Records at 67, 71.

After returning from the hospital, plaintiff submitted additional kites, *see, e.g.*, Medical Records at 29–45, and grievance forms, *see* Grievance Forms at 225–27, 230.  She continued to experience severe pain, *see, e.g.*, Journal at 196–211; Medical Records at 29–30, 34, 38, and reported significant delays in receiving her pain medication, which exacerbated her pain, *see* Grievance Forms at 227, 230; *see also* Medical Records at 30.  In one of her grievance forms dated May 23, 2019, plaintiff requested to speak "to the ADA officer[8] as soon as possible" and noted she had still not seen an orthopedic surgeon and had not received responses to her kites and grievances.  Grievance Forms at 230.

Finally on May 29, 2019, plaintiff was evaluated by an orthopedic surgeon who recorded "[t]he patient will need surgery . . . Plan to do with surgery within 1 to 2 weeks."  *Id.* at 69.  Plaintiff continued to submit kites, *see, e.g.*, Medical Records at 13–21, and grievance forms, *see* Grievance Forms at 233–236.  She also continued to experience severe pain.  *See, e.g.*, Journal at 211–16; Medical Records at 13–24.  Plaintiff was released more than two weeks later on June 16, 2019, before obtaining surgery.  SUF ¶ 20; Arrest Docs. at 11.  The parties dispute whether defendants in fact scheduled her surgery.  SUF ¶ 16; *compare* Gallagher Dep. 32:14–18

---

[7] "Edema is the medical term for swelling and it happens when small blood vessels leak fluid into nearby tissues."  *Matuu v. Kijakazi*, No. 20-00446, 2021 WL 6062872, at *2 (D. Haw. Dec. 22, 2021).

[8] The court assumes an ADA officer is someone who ensures compliance with the Americans with Disabilities Act.  *Cf. Pierce v. County of Orange*, 761 F. Supp. 2d 915, 957 (C.D. Cal. 2011) (noting County defendant must provide training for its "ADA compliance officers").

(testifying it was her understanding surgery was scheduled), *with* Emails at 249, Merin Decl. Ex. K (emailing a response that plaintiff needs surgery before her release).[9]

The day of her release, plaintiff sought emergency medical attention at UC Davis Medical Center.  *See generally* Post-Release Medical Records, Merin Decl. Ex. L.  Her medical record notes she had an "[a]cute injury with swelling/deformity," *id.* at 261, and the emergency room doctor recorded plaintiff needed surgery, *see id.* at 265.  Plaintiff testifies the doctor told her she needed surgery "as soon as possible."  Mollica Dep. 37:6–13.  On June 27, 2019, a doctor referred plaintiff to orthopedic surgery, and noted the timeframe was "urgent."  Post-Release Medical Records at 271.  Plaintiff sought out other orthopedic surgeons who were not affiliated with the UC Davis Medical Center, Mollica Dep. 38:1–10, and ultimately did have surgery, *id.* 40:2–5; SDF ¶ 95.  The record does not specify on which date the surgery was performed.  Plaintiff was unable to walk without the assistance of crutches for four to six months, Mollica Dep. 45:22–46:3, could not walk without a limp for at least another a year after, still occasionally has a limp, and has limited range of motion in her foot.  *Id.* 46:8–12, 50:7–52:5.  Her surgeon informed plaintiff it would take six months to a year to rehabilitate her foot, *id.* 46:13–15, and told her the rehabilitation time and loss of range of motion in her foot would have been less if she had had surgery earlier, *id.* 40:13–21, 50:3–16.

Plaintiff brings this action against defendants Sacramento County, Sacramento County Sheriff's Department, Sheriff Scott Jones, Doctor Tammy Morin and Nurse Nancy Gallagher.  *See* FAC ¶¶ 6–10.  Plaintiff brings the following eight claims:

1)   Violation of the right to medical care under the Eighth Amendment against all defendants;

2)   Violation of the Rehabilitation Act against the County of Sacramento and Sacramento County Sheriff's Department;

3)   Violation of the Americans with Disabilities Act (ADA) against the County of Sacramento and Sacramento County Sheriff's Department;

---

[9] Ms. Gallagher's email response is non-hearsay under Federal Rule of Evidence 801(d)(2) as an opposing party statement.

4) Violation of the right to medical care and treatment under California Government Code section 845.6 against the County of Sacramento, Sacramento County Sheriff's Department, Dr. Morin and Nurse Gallagher;

5) Violation of the Bane Act against all defendants;

6) Intentional infliction of emotional distress against Sheriff Jones, Dr. Morin and Nurse Gallagher;

7) Negligence against Sheriff Jones, Dr. Morin and Nurse Gallagher; and

8) Professional and medical negligence against Dr. Morin and Nurse Gallagher.

*See generally id.* Plaintiff voluntarily dismissed her Eighth Amendment claim against Sheriff Jones and professional negligence claims against Doctor Morin and Nurse Gallagher. *See* Joint Status Report at 2, ECF No. 77; Opp'n at 16, 26, ECF No. 80. Defendants move for summary judgment on all the claims. MSJ, ECF No. 79-1. Plaintiff opposes, Opp'n, and defendants have replied, Reply, ECF No. 85. The court held a hearing on this matter on March 31, 2023. Mins. Mot. Hr'g, ECF No. 88. Mark Merin and Paul Masuhara appeared for plaintiff. John Whitefleet appeared for defendants. *Id.*

## IV.   LEGAL STANDARD

A court may grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Therefore, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *see Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."). "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp.*, 477 U.S. at 328 (White, J., concurring); *see also id.* at 332 (Brennan, J., dissenting) ("Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient.").

The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Additionally, in resolving the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

# V.     ANALYSIS

## A.     Right to Medical Care

### 1.     The Eighth Amendment Applies

Plaintiff claims defendants County of Sacramento, Sacramento County Sheriff's Department, Sheriff Jones,[10] Dr. Morin and Nurse Gallagher violated her right to medical care. FAC ¶ 70. Claims about medical care arise under the Fourteenth Amendment's Due Process Clause for pretrial detainees and under the Eighth Amendment Cruel and Unusual Punishment Clause for convicted prisoners. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). At hearing, the parties disagreed on whether plaintiff was a pretrial detainee at the

---

[10] Plaintiff voluntarily dismissed her section 1983 deliberate indifference claim against Sheriff Jones. *See* Joint Status Report at 2; Opp'n at 16, 26.

1    relevant time.  Plaintiff argues she was a pretrial detainee and the Fourteenth Amendment applies.

2    Opp'n at 14.  Defendants argue the complaint does not state a Fourteenth Amendment claim,

3    Reply at 2, and at hearing, argued plaintiff was a convicted prisoner.  Drawing all inferences in

4    the light most favorable to plaintiff, the court finds the Eighth Amendment applies.

5            Plaintiff was in custody following her arrest for violating the terms and conditions of the

6    Sacramento County Sheriff's Department's work release program.  FAC ¶ 13; *see* SDF ¶ 1.  A

7    work release program permits participants to complete their sentence through participation in the

8    program in lieu of confinement.  *See In re Barber*, 15 Cal. App. 5th 368, 373 (2017).  Under

9    California Penal Code §§ 4024.2(c)(1) and 4024.3(c)(1), which authorize counties to establish

10   voluntary or mandatory work release programs, participants in such programs must sign an

11   agreement (if voluntary under § 4024.2) or acknowledgement (if mandatory under § 4024.3) "that

12   the sheriff may immediately retake the person into custody to serve the balance of the

13   [participant's] sentence" if the person violates certain conditions.  Cal. Penal Code §§ 4024.2,

14   4042.3.

15           Ninth Circuit caselaw suggests an individual in custody for violating the terms of

16   probation or parole is considered a pre-trial detainee if she has not had a hearing on the violation.

17   *See Sandoval v. County of San Diego*, 985 F.3d 657, 662 (9th Cir.), *cert. denied sub nom. San*

18   *Diego County v. Sandoval*, 211 L. Ed. 2d 400 (2021) (applying Fourteenth Amendment to

19   plaintiff who was in custody for a probation violation); *Hanington v. Multnomah County*,

20   593 F. Supp. 3d 1022, 1032 (D. Or. 2022) (collecting cases and finding "individuals arrested for

21   suspected parole violations are pretrial detainees subject to the Fourteenth Amendment"); *but see*

22   *Flores v. Mesenbourg*, No. 95-17241, 116 F.3d 483, 1997 WL 303277, at *1 (9th Cir. June 2,

23   1997) (table) (Eighth Amendment applied to convicted prisoner incarcerated for parole violation

24   because "[h]is original conviction is the authority under which he was confined after his parole

25   violation").  Here, plaintiff does not plead or argue she was in custody for violating the terms of

26   probation or parole.  *See generally* FAC; Opp'n.  The record does not suggest she was awaiting a

27   hearing.  Rather, she alleges she was incarcerated "for failing to comply with the terms and

28   conditions" of the work release program.  FAC ¶ 13.  This means the sheriff could "immediately

retake [her] into custody to serve the balance of [her] sentence." *See* Cal. Penal Code §§ 4024.2, 4042.3.  Because plaintiff was still serving the remainder of her sentence, and was not awaiting an "adjudication of guilt," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), plaintiff was a prisoner, *see People v. Cortez*, 24 Cal. App. 4th 510, 513 (1994) (noting work release programs are "for persons who are committed to but not confined in jail").  Accordingly, the Eighth Amendment applies.

### 2.     Deliberate Indifference under the Eighth Amendment

"The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and marks omitted).  Deliberate indifference can be manifested by intentional delay in medical care and "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.  In the Ninth Circuit, to prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must show 1) "a serious medical need" and 2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Defendants do not argue plaintiff did not have serious medical needs.  MSJ at 3–5. Accordingly, the court moves to the next prong: whether a reasonable jury could find defendants were deliberately indifferent to plaintiff's serious medical needs.  This second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.  "[A] prison official will be liable for disregarding an inmate's serious medical needs only if he was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and actually 'dr[e]w the inference.'" *Sandoval*, 985 F.3d at 667–68 (quoting *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc)).  Deliberate indifference "may be manifested in two ways." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  "It may appear when

1    prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown

2    by the way in which prison physicians provide medical care." *Id.*

3        The court finds there is a genuine dispute whether defendants were deliberately indifferent

4    to plaintiff's serious medical needs by delaying necessary orthopedic care and treatment.  The

5    morning after her injury, on May 9, 2019, a doctor reviewed plaintiff's x-ray, noted a probable

6    calcaneal fracture and ordered an orthopedic surgery consult.  Medical Records at 57.  However,

7    plaintiff did not see an orthopedic doctor for surgery consultation and defendants did not

8    authorize plaintiff to be seen by the emergency department until a week later.  *See id.* at 44, 74.

9    The doctor at the emergency department told plaintiff she needed to get surgery "as soon as

10   possible."  Mollica Dep. 30:23–25.  However, plaintiff did not see an orthopedic surgeon for

11   consultation until May 29, twenty-one days after her injury.  Medical Records at 69.  During this

12   time, plaintiff made known her pain and needs, including an ADA accessible shower and pain

13   medication, every day through kites, grievance forms and by talking to guards.  *See generally id.*;

14   Journal; Grievance Forms.  The medical records show plaintiff needed pain medication to manage

15   her pain and her foot was bruised and swollen for weeks.  *See generally* Medical Records.  The

16   parties also dispute whether surgery was in fact ever scheduled.  SUF ¶ 16.  Plaintiff did not get

17   surgery prior to her release, and upon release, an ER doctor told her she needed surgery "as soon

18   as possible."  Mollica Dep. 37:9–13; *see* Post-Release Medical Records at 265.  Later, a doctor

19   ordered a referral to orthopedic surgery and labelled it as "urgent."  *See* Post-Release Medical

20   Records at 271.  Reasonable jurors could find that delaying necessary orthopedic care, including

21   surgery, rose to the level of deliberate indifference.  *See Estelle*, 429 U.S. at 103 ("[F]ailure [to

22   treat medical needs] may actually produce physical torture [or] may result in pain and suffering

23   which no one suggests would serve any penological purpose." (internal marks and citation

24   omitted)).

25       In two short paragraphs, defendants argue summary judgment is warranted on plaintiff's

26   Eighth Amendment claim against Dr. Morin and Nurse Gallagher because plaintiff cannot prove

27   Dr. Morin had knowledge of plaintiff's circumstances or had actual contact with her.  MSJ at 4.

28   Further, they claim she cannot prove either Dr. Morin or Nurse Gallagher was aware of any

1    medical necessity to schedule orthopedic surgery consult earlier or to schedule immediate

2    surgery.  *Id.*  Defendants also argue Nurse Gallagher "cannot dictate when an orthopedic surgeon

3    is available at [SJGH]."  *Id.*  Their arguments are unavailing.

4           As a preliminary matter, the parties dispute whether plaintiff needed to consult an

5    orthopedic doctor for surgery consultation and have surgery immediately.  *Compare* MSJ at 4,

6    *with* Opp'n at 15–16; *see* SDF ¶¶ 16, 17, 21, 28, 31–32, 42.  The parties also dispute whether

7    defendants knew of plaintiff's circumstances.  *Compare* MSJ at 4, *with* Opp'n at 15–16; *see* SUF

8    ¶¶ 9, 13–14; SDF ¶¶ 38, 105.

9           During the relevant time, Dr. Morin organized physician medical care for inmate patients.

10   Morin Dep. 16:17–22.  While plaintiff appears to concede Dr. Morin did not read any of

11   plaintiff's kites and grievances, Opp'n at 16, Dr. Morin was plaintiff's "authorizing provider" and

12   was the one who authorized plaintiff to go to the Emergency Department at SJGH, a week after

13   her injury, SDF ¶ 48; Medical Records at 68; Morin Dep. 30:1–8.  In her deposition, Dr. Morin

14   also recollected signing an order for plaintiff "[t]o get a repair of the left calcaneal fracture."

15   Morin Dep. 28:15–29:7.  Viewing the evidence in the light most favorable to plaintiff, the court

16   concludes a reasonable juror could find Dr. Morin had knowledge of plaintiff's serious medical

17   needs.  *See Jett*, 439 F.3d at 1098 (concluding plaintiff was "entitled to an inference that

18   [defendant] was aware of the filed grievance, medical slips, and aftercare instructions in his

19   medical record"); *cf. Peralta*, 744 F.3d at 1087 (signing plaintiff's second-level appeal did not

20   demonstrate knowledge of substantial risk of serious harm because "[a]lthough he supervised the

21   dental department, [defendant] isn't a dentist, and he didn't independently review [plaintiff's]

22   claims or read his chart before signing off on the second-level appeal").

23          Nurse Gallagher was plaintiff's case manager, SUF ¶ 7; Medical Records at 91, and

24   "signing provider," SDF ¶ 48; Medical Records at 68.  Her duties included helping inmates

25   including plaintiff obtain specialty care services, Morin Dep. 23:16–21, 24:9–23, and facilitating

26   an appointment between plaintiff and an orthopedic specialist at SJGH, Gallagher Dep. 15:13–19.

27   Nurse Gallagher sent an email noting plaintiff needed surgery before her release, Emails at 249,

28   and testified she knew "Ms. Mollica was sitting almost every single day in sick call or whatever

and she was asking about [her medical treatment]." Gallagher Dep. 29:16–20.  Here, whether Nurse Gallagher had knowledge of plaintiff's serious medical needs so as to satisfy the legal standard is for a jury to decide.

Viewing the facts in the light most favorable to plaintiff, the court finds a reasonable jury could find Dr. Morin and Nurse Gallagher, as the medical director who was the authorizing provider and as plaintiff's case manager who was the signing provider, respectively, were aware of plaintiff's serious medical need and were deliberately indifferent to that need.  *See Jett*, 439 F.3d at 1098 ("As prison administrators, [defendants] are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help.").  While incarcerated, plaintiff was in the care of defendants.  She could not schedule her own appointments.  She made her severe pain and needs known every day.  A jury could find the medical records, journal entries and grievance forms support this narrative.  Defendants argue they had no control over when SJGH had available appointments.  MSJ at 4.  However, defendants could have consulted other hospitals or figured out an alternative way to ensure plaintiff, who was in their custody and care, received the orthopedic care and surgery she needed.  The fact that the County contracts with only one hospital does not excuse a constitutional violation.  *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) ("[T]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.").  Here, the court is unable to conclude as a matter of law that defendants were not deliberately indifferent to plaintiff's serious medical needs.

### 3.    Qualified Immunity

Alternatively, defendants argue they are entitled to qualified immunity.  "A government official's entitlement to qualified immunity depends on (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (citation and marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curium).  Courts are "permitted to exercise their sound

14

1   discretion in deciding which of the two prongs of the qualified immunity analysis should be

2   addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*,

3   555 U.S. 223, 236 (2009).

4           As discussed above the court is unable to conclude as a matter of law that Dr. Morin and

5   Nurse Gallagher did not violate plaintiff's Eighth Amendment rights.  Thus, for the purpose of

6   this order, the court assumes plaintiff's rights were violated.  Accordingly, the court resolves the

7   second prong: whether there is clearly established law of which defendants should have been

8   aware.  "'Clearly established' means that, at the time of the officer's conduct, the law was

9   'sufficiently clear' that every 'reasonable official would understand that what he is doing' is

10  unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731,

11  741 (2011)).  The "clearly established law" must be defined with a "high 'degree of specificity.'"

12  *Id.* at 590 (quoting *Mullenix v. Luna*, 557 U.S. 7, 13 (2015)).  The court must match the

13  "particular circumstances" and "context" to controlling law.  *Id.*  "[F]or a right to be clearly

14  established, existing precedent must have placed the statutory or constitutional question beyond

15  debate," and must "squarely govern[] the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct.

16  1148, 1152–53 (2018) (per curiam) (internal marks and citation omitted).

17          Defendants argue there is no existing precedent that a delay in receiving needed surgery

18  constitutes deliberate indifference "particularly where the outside contractor . . . must provide its

19  availability for the surgery."  MSJ at 7.  However, the law has been clearly established for some

20  time, that "deny[ing], delay[ing] or intentionally interfere[ing] with medical treatment" violates

21  the Eighth Amendment. *Hutchinson*, 838 F.2d at 394; *see Hunt v. Dental Dep't*, 865 F.2d 198,

22  201 (9th Cir. 1989) (finding deliberate indifference when officials delayed dental care).  The

23  Supreme Court also has concluded "deliberate indifference to serious medical needs of prisoners

24  constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is

25  manifested by prison doctors in their response to the prisoner's needs or by prison guards in

26  intentionally denying or delaying access to medical care . . . ." *Estelle*, 429 U.S. 97 at 104–05.

27          Moreover, in 2006, well before plaintiff's injury, the Ninth Circuit held delaying

28  necessary medical care because of administrative reasons "unrelated to the medical needs of the

1    prisoner" is akin to deliberate indifference. *See Jett*, 439 F.3d at 1097; *see also Padilla v. Beard*,

2    No. 14-1118, 2017 WL 1253874, at *20 (E.D. Cal. Jan. 27, 2017) ("[B]y 1992 it was clearly

3    established that a prison official could be deliberately indifferent in declining to choose a certain

4    course of medical treatment for reasons unrelated to the medical needs of the prisoner.").  In *Jett*,

5    the plaintiff alleged defendants were deliberately indifferent to his need to have his fractured

6    thumb set and cast. 439 F.3d at 1093.  The plaintiff informed the defendant doctor he was in pain

7    and needed orthopedic care.  *Id.* at 1094.  In explaining why the plaintiff was not returned to the

8    non-contracted hospital where he initially received emergency treatment for a follow-up visit, or

9    why there was a delay in plaintiff seeing an orthopedist, the defendant stated the prison "generally

10   sends patients to . . . its contracted facility."  *Id.* at 1097.  The Ninth Circuit found that if the

11   defendant "decided not to request an orthopedic consultation merely because [the plaintiff] could

12   not go back to . . . , a non-contracted facility," such conduct is "akin to cases finding deliberate

13   indifference where prison officials and doctors deliberately ignore[ ] the express orders of a

14   prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Id.*

15   (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992)).

16          The facts of this case are very similar to *Jett*.  Here, plaintiff requested orthopedic care

17   multiple times and informed prison officials of her pain.  The court has found a genuine dispute

18   whether defendants were aware of plaintiff's serious medical needs.  Defendants argue they

19   cannot be liable because an outside contractor "must provide its availability for the surgery."

20   MSJ at 7.  If the jury were to find defendants knew of her injury and delayed plaintiff's

21   orthopedic surgery consultation and actual surgery merely because SJGH did not have available

22   appointments, or for other reasons unrelated to her medical needs, that would constitute deliberate

23   indifference under *Jett*.  Because "there are disputed factual issues that are necessary to a

24   qualified immunity decision, th[o]se issues must first be determined by the jury before the court

25   can rule on qualified immunity." *See S.R. Nehad*, 929 F.3d at 1140 (quoting *Morales v. Fry*,

26   873 F.3d 817, 824 (9th Cir. 2017)).  Accordingly, the court declines to decide the issue of

27   qualified immunity at this time.  Defendants may renew their qualified immunity defense after the

28   jury has determined the relevant facts.

1          **4.      *Monell* Liability**

2          Defendants also move for summary judgment on plaintiff's claims against the County and

3 Sheriff's Department.  To prevail on a claim under *Monell*, the plaintiff must ultimately show:

4 "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the

5 municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

6 constitutional right; and, (4) that the policy is the moving force behind the constitutional

7 violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted).

8 The plaintiff must demonstrate this policy or custom "reflects deliberate indifference to the

9 constitutional rights of [the municipality's] inhabitants," and there must be a "direct causal link

10 between a municipal policy or custom and the alleged constitutional deprivation." *Castro v.*

11 *County of Los Angeles*, 833 F.3d 1060, 1073, 1075 (9th Cir. 2016) (quoting *City of Canton v.*

12 *Harris*, 489 U.S. 378, 385, 392 (1989)).  The Ninth Circuit recognizes four theories of *Monell*

13 liability: (1) an official policy; (2) ratification by a final policymaker; (3) a failure to train;

14 supervise, or discipline; or (4) a pervasive custom or practice.  *Horton by Horton v. City of Santa*

15 *Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

16          Without identifying undisputed facts in support of their position, defendants argue in one

17 sentence plaintiff "cannot prove that any policy was the moving force behind any claimed Eighth

18 Amendment violation, nor any custom or practice of inaction in terms of scheduling surgeries

19 with outside providers."  MSJ at 7.  Defendants provide the court with the legal standard and cite

20 various cases without tying them to the facts underlying this case.  *See id.* at 7–8.  Defendants'

21 conclusory arguments, without more, are insufficient to establish an absence of a genuine issue of

22 material fact.  *See Celotex Corp.*, 477 U.S. at 328 (White, J., concurring).  Accordingly, summary

23 judgment can be denied on this ground alone.

24          Even if the court were to find defendants met their initial burden, plaintiff has

25 demonstrated a triable issue of fact regarding the existence of an official policy.  Local

26 governments may be liable "when implementation of its official policies or established customs

27 inflicts the constitutional injury."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

28 708 (1978) (Powell, J., concurring).  As defendants themselves acknowledge, SJGH must provide

17

1   its availability for orthopedic surgeries for any procedure there, because the County does not have

2   its own facilities or expertise to conduct such a surgery.  MSJ at 7.  The County contracts with

3   only one hospital, SJGH.  Gallagher Dep. 37:3–10.  Accordingly, if SJGH does not have available

4   appointments for the inmates in the County, inmates' medical care will be delayed for reasons

5   unrelated to their medical needs.  *See, e.g.*, Inmate Grievances at 14, Merin. Decl. Ex. O, ECF

6   No. 89 (noting at time of submitting grievance form, inmate patient was still waiting for surgery

7   and learned "U.C. Davis will not perform the surgery because RCCC is not contracted with U.C.

8   Davis"); *id.* at 71 (explaining "medical staff have no control over outside the facility

9   appointment" in response to inmate grievance form stating a doctor informed the inmate of a need

10  for surgery).  A reasonable jury could find the official policy of having only one contracted

11  hospital where inmate patients can receive certain medical treatments, such as orthopedic surgery

12  and other specialized treatments, reflects deliberate indifference to inmates' medical needs and is

13  the moving force behind the delays in medical care, thus violating prisoners' Eighth Amendment

14  rights.  *Cf. Peralta*, 744 F.3d at 1084 ("A chronic shortage of resources may well amount to a

15  policy or practice for which monetary relief may be available under *Monell*.").

16          In addition to an official policy, plaintiff provides evidence of a custom or practice of

17  delaying medical care.  The Supreme Court has held "a plaintiff may be able to prove the

18  existence of a widespread practice that, although not authorized by written law or express

19  municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the

20  force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H.

21  Kress & Co.*, 398 U.S. 144, 167–68 (1970)) (internal marks omitted).  A few "isolated or sporadic

22  incidents" are not enough to prove a city has an unconstitutional custom or practice.  *Trevino v.

23  Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  A practice or custom must have "sufficient duration,

24  frequency and consistency" that it has "become a traditional method of carrying out policy."  *Id.*

25  A "policy of inaction" can amount to an unconstitutional policy.  *See Connick v. Thompson*,

26  563 U.S. 51, 61 (2011).  The pattern of incidents must reflect "similar constitutional violations."

27  *Id.* at 62.

Here, plaintiff has pointed to a pattern of similar constitutional violations reflecting deliberate indifference to medical needs through delayed surgeries and orthopedic surgery consultations.  *See generally* Inmate Grievances (showing multiple grievances noting delay in receiving orthopedic surgery and consultation).  Plaintiff also has provided a consent decree in which a court has ordered defendants to provide constitutional medical care.  Consent Decree, Merin Decl. Ex. Q.[11]  According to the second monitoring report required by the consent decree, there was evidence that the Sacramento County Jail, including the Main Jail and RCCC, did not provide inmate patients timely access to care for serious medical needs.  Monitoring Report at 494, Merin Decl. Ex. R.  Among other things, the report found specialty care was "often delayed even when available in the local community."  *Id.* at 515.  The reported delays included when orthopedic surgery was required.  *See id.* (providing example of patient who "saw an outside orthopedic surgeon" a month after her injury, despite having a "type of fracture [that] often requires surgical repair").  There is sufficient evidence supporting plaintiff's case such that there is a genuine dispute whether the County and Sheriff's Department maintain a custom or practice of delaying orthopedic care.  The court **denies** summary judgment as to this claim.  Because it denies summary judgment, the court declines to address plaintiff's arguments regarding the other theories of *Monell* liability.  *See Quinto-Collins v. City of Antioch*, No. 21-06094, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) ("In the context of *Monell*, the different theories of liability . . . are best understood . . . as different arguments in support of a single claim.").  To the extent plaintiff wishes to continue to rely on those theories at trial, the parties may address those theories by way of motions *in limine* prior to trial.  *See Perkins v. City of Modesto*, No. 19-00126, 2022

---

[11] Plaintiff's claims for damages are not precluded by the consent decree.  The parties' joint motion for approval of the class action settlement leading to the decree states "the class and disability subclass sought only declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), and the settlement does not bar class members from pursuing individual damage claims."  Joint Motion, *Mays v. County of Sacramento*, No. 18-02081 (E.D. Cal. Nov. 12, 2020), ECF No. 102.  The court in *Mays* granted the joint motion.  Order, *Mays v. County of Sacramento* No. 18-02081 (E.D. Cal. Jan. 13, 2020), ECF No. 110.  The court takes judicial notice of the documents on file in *Mays*.  *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

1    WL 297101, at *18 n.16, 20 n.17 (E.D. Cal. Feb. 1, 2022) (declining to address plaintiff's

2    additional theories of *Monell* liability and reserving question for motions *in limine*).

3              **B.     Americans with Disabilities Act (ADA) and Rehabilitation Act**

4              Plaintiff alleges defendants County of Sacramento and Sacramento County Sheriff's

5    Department violated the ADA and the Rehabilitation Act.  FAC ¶¶ 76, 83.  Title II of the ADA

6    provides: "[N]o qualified individual with a disability shall, by reason of such disability, be

7    excluded from participation in or be denied the benefits of the services, programs, or activities of

8    a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section

9    504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . .

10   shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

11   benefits of, or be subjected to discrimination under any program or activity receiving Federal

12   financial assistance."  29 U.S.C. § 794.  Given their similarity, the court treats the two statutory

13   schemes as one and evaluates them under a single framework.  *See Zukle v. Regents of Univ. of*

14   *Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

15             Under the dual ADA and Rehabilitation Act analysis, a plaintiff must show: "(1) she is a

16   qualified individual with a disability; (2) she was excluded from participation in or otherwise

17   discriminated against with regard to a public entity's services, programs, or activities, and

18   (3) such exclusion or discrimination was by reason of her disability."  *Lovell v. Chandler*, 303

19   F.3d 1039, 1052 (9th Cir. 2002).

20             Defendants argue plaintiff cannot establish she had a disability because a "broken foot is

21   an inherently temporary condition."  MSJ at 10.  The court finds this argument unpersuasive.

22   Under both the ADA and the Rehabilitation Act, "[t]he term 'disability' [includes] a physical . . .

23   impairment that substantially limits one or more major life activities of such individual . . . ."

24   42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(9)(A)–(B) (including definition of terms under

25   Rehabilitation Act and specifically referencing ADA definition).  Major life activities include

26   walking, standing, caring for oneself, performing manual tasks and working.  42 U.S.C.

27   § 12012(2)(A).  The ADA Amendment Act of 2008 established "[r]ules of construction regarding

28   the definition of disability," including that the Act must be "construed in favor of broad coverage

1   . . . to the maximum extent permitted by the terms of [the ADA]." *Id.* § 12102(4)(A).  In

2   addition, "[a]n impairment that is episodic or in remission is a disability if it would substantially

3   limit a major life activity when active." *Id.* § 12102(4)(D).  There is no "categorical temporal

4   limitation." *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022).  Here,

5   plaintiff could not walk or stand without the assistance of crutches while she was incarcerated.

6   Medical Records at 17–59.  A reasonable juror could find plaintiff had a disability while she was

7   in the County's custody.

8       Second, defendants argue plaintiff cannot establish she lacked "access to any purported

9   program or activity" due to her disability.  MSJ at 10.  Defendants focus on the delay in surgery

10  and access to medical care. *Id.*  Defendants are correct "inadequate medical care does not provide

11  a basis for an ADA claim unless medical services are withheld *by reason of* a disability." *Marlor*

12  *v. Madison County*, 50 F. App'x 872, 873 (9th Cir. 2002) (unpublished) (emphasis in original).

13  However, under the ADA, prohibited discrimination includes the failure to reasonably

14  accommodate individuals with disabilities. *See* 42 U.S.C. § 12182 (b)(2)(A)(ii).  "[A]lleged

15  deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such

16  fundamentals as . . . medical care, and virtually all other prison programs constitute[] exclusion

17  from participation in or . . .  denial of the benefits of the prison's services, programs, or

18  activities." *United States v. Georgia*, 546 U.S. 151, 157 (internal marks and citation omitted).

19  Here, defendants do not address the issue of reasonable accommodations.  At hearing,

20  defendants' counsel admitted he was not sure what accommodation was required other than

21  honoring plaintiff's request for a lower bunk prior to her injury. *See* SDF ¶¶ 8–9.  On this record,

22  defendants have not met their initial burden under the summary judgment standard to show the

23  absence of evidence supporting plaintiff's case. *See Mark H. v. Lemahieu*, 513 F.3d 922, 938

24  (9th Cir. 2008) ("[A] public entity can be liable for damages under § 504 if it intentionally or with

25  deliberate indifference fails to provide meaningful access or reasonable accommodation to

26  disabled persons.").  Summary judgment can be denied on this ground alone.

27      Moreover, plaintiff argues she was denied reasonable accommodations despite making

28  multiple requests. *See* Opp'n at 22.  For example, officials disciplined plaintiff for creating a

1    makeshift bag to carry her belongings rather than providing some other form of accommodation

2    during her transfer to RCCC.  *See* SDF ¶¶ 25–26.  Plaintiff also avers she fell "twice because [she

3    had] been told to hurry up," Grievance Forms at 238, suggesting a lack of accommodation.

4    Despite a nurse's confirming plaintiff's need for "medical shower accommodation," Medical

5    Records at 53, an officer told plaintiff to use a regular shower, Journal at 191.  Plaintiff also

6    reported several instances of pain medication denials or delays, despite her requests.  *See, e.g.*,

7    Grievance Forms at 227, 230; Medical Records at 30.  The court finds there is a triable issue of

8    fact regarding whether plaintiff had a disability and whether defendants discriminated against her

9    by failing to provide reasonable accommodations.  The court **denies** summary judgment as to the

10   ADA and Rehabilitation Act claims.

11              **C.      Right to Medical Care under California Government Code § 845.6**

12              Plaintiff claims defendants County of Sacramento, Sacramento County Sheriff's

13   Department, Dr. Morin and Nurse Gallagher violated her right to medical care under California

14   Government Code section 845.6.  FAC ¶ 90.  Under section 845.6, public entities and their

15   employees are directly liable if they know or have reason to know a "prisoner is in need of

16   immediate medical care" but do not "take reasonable action to summon such medical care."  Cal.

17   Gov't Code § 845.6.

18              Defendants argue plaintiff's claim under this section fails because plaintiff was already

19   under the observation of medical staff.  MSJ at 11.  The Ninth Circuit has held "the term

20   'immediate medical care' as used in the statute includes both diagnosis and treatment . . . ."  *Jett*,

21   439 F.3d at 1099.  Therefore, "the need for 'immediate medical care' can arise more than once in

22   relation to an ongoing serious medical condition."  *Id*.  However, the Second District Court of

23   Appeal of California rejected *Jett*'s interpretation of section 845.6.  *See Castaneda v. Dep't of

24   Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1074 (2013).  It found "the Ninth Circuit's application

25   of section 845.6 [in *Jett*] ignores California authority interpreting that statute."  *Id*.  California

26   courts have held that a defendant is summoned to provide treatment, the failure to ensure a proper

27   diagnosis, monitor progress or prescribe necessary medication all "are issues relating to the

1    manner in which medical care is *provided*, and do not subject the State to liability under section

2    845.6 for failure to *summon*." *Id.* (emphases in original).

3        The court finds *Castaneda* controls.  *See Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th

4    Cir. 2009) ("In the absence of a pronouncement by the highest court of a state, the federal courts

5    must follow the decision of the intermediate appellate courts of the state unless there is

6    convincing evidence that the highest court of the state would decide differently."); *see also Scalia*

7    *v. County of Kern*, 308 F. Supp. 3d 1064, 1087 (E.D. Cal. 2018) (declining to follow *Jett* in light

8    of *Castaneda*).  At hearing, plaintiff argued the Ninth Circuit's decision in *Horton*, which

9    followed *Castaneda*, reaffirmed the primacy of *Jett*.  However, in *Horton*, the Circuit held "*Jett*

10   thus makes clear that 'immediate' does not signify urgent; rather, the obligation to summon

11   immediate medical care requires that the public employee act in a 'timely' manner, so as to

12   prevent further injury." *Horton by Horton*, 915 F.3d at 608.  There, the question was whether the

13   officer failed to summon immediate medical care for a suicidal plaintiff who suffered severe brain

14   damage as a result of an attempted suicide in a temporary holding cell.  *Id.* at 597–98, 607–08.

15   The Ninth Circuit did not address whether the obligation to summon medical care can arise again

16   for the same injury, even after officials initially summoned care.  *See id.* at 607–08.  Additionally,

17   in a recent unpublished decision, the Ninth Circuit cited *Castaneda* in finding the plaintiff's

18   arguments implicated correctional staff's decisions regarding plaintiff's care and "not a failure to

19   summon care." *Vivanco v. Cal. Dep't of Corr. & Rehab.*, 817 F. App'x 492, 493 (9th Cir. 2020)

20   (unpublished).  In *Vivanco*, the plaintiff alleged officers failed to monitor and "make their daily

21   rounds to check on [the decedent's] conditions." *Vivanco v. California Dep't of Corr. & Rehab.*,

22   17-00434, 2019 WL 2764397, at *9 (E.D. Cal. July 2, 2019), *aff'd*, 817 F. App'x at 492.

23       Here, defendants summoned care when they learned plaintiff injured her foot, and an

24   orthopedic technician placed plaintiff in a splint and fitted her with crutches.  Medical Records at

25   59.  Plaintiff continued to receive medical care from other medical staff at the jail.  *See generally*

26   *id.*  Questions of whether she needed to see an orthopedic doctor, get immediate surgery or

27   received the proper care all involve decisions about plaintiff's care and not the failure to summon

28   care.  *See Castaneda*, 212 Cal. App. 4th at 1074 ("Once summoned, the quality of medical care is

1    a matter of medical policy and practice, . . . but it is not a violation of the employee's obligation

2    to summon medical care under section 845.6.").  Accordingly, the court **grants** summary

3    judgment as to this claim.

4          D.      **Bane Act**

5          Plaintiff brings a Bane Act claim against defendants County of Sacramento, Sacramento

6    County Sheriff's Department, Sheriff Jones, Dr. Morin and Nurse Gallagher.  FAC ¶ 96.  The

7    Bane Act, codified at California Civil Code section 52.1, "protects individuals from conduct

8    aimed at interfering with rights that are secured by federal or state law, where the interference is

9    carried out 'by threats, intimidation or coercion.'"  *Reese v. County of Sacramento*, 888 F.3d

10   1030, 1040 (9th Cir. 2018) (quoting *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230

11   (2007)); *see* Cal. Civ. Code § 52.1(b).  When a Bane Act claim is based on an alleged federal

12   constitutional violation, as here, plaintiffs may rely on the same allegations to prove both that the

13   defendant deprived them of a constitutional right and threatened, intimidated or coerced them

14   under the Bane Act.  *See Reese*, 888 F.3d at 1043.  But the claim must also rest on factual

15   allegations that would allow an inference the defendant had a "specific intent" to violate the

16   plaintiff's rights.  *See id.* (*quoting Cornell v. City of San Francisco*, 17 Cal. App. 5th 766, 801

17   (2017)).  These rules are applicable to claims of deliberate indifference to serious medical needs.

18   *See Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018).

19         Defendants conclude in one sentence that summary judgment should be granted on this

20   claim because "there is no evidence Plaintiff had any interactions with defendants, much less that

21   rise to the level of threats, intimidation, or coercion . . . ."  MSJ at 13.  As plaintiff notes,

22   however, "[d]efendants fail to identify or analyze any right" underlying her Bane Act claim.  *See*

23   Opp'n at 24; MSJ at 14; *see also* FAC ¶ 99 (alleging defendants are liable under Bane Act for

24   depriving plaintiff of her statutory and constitutional rights protected by Eighth Amendment of

25   the U.S. Constitution, Article I Section 17 of California Constitution, Rehabilitation Act, and

26   ADA).  One conclusion unsupported by argument or reference to the record is insufficient for

27   defendants to meet their initial burden at summary judgment.

1    While it is true a moving party may discharge its initial burden "by 'showing'—that is,

2    pointing out to the district court—that there is an absence of evidence to support the nonmoving

3    party's case," *Celotex Corp.*, 477 U.S. at 325, "[it] is not enough to move for summary judgment

4    without supporting the motion in any way or with a conclusory assertion that the plaintiff has no

5    evidence to prove his case," *id.* at 328 (White, J., concurring).  As the Ninth Circuit explained, the

6    Supreme Court in *Celotex* found the moving party could show an absence of evidence by

7    "direct[ing] the district court's attention to [the nonmoving party's] answer to interrogatories . . .

8    and to the absence of any other evidence . . . in the materials compiled during discovery." *Nissan*

9    *Fire & Marine Ins. Co.*, 210 F.3d at 1105.  In other words, the moving party cannot shift the

10   burden to the nonmoving party "simply by saying that the nonmoving party has no such

11   evidence." *Id.*  Otherwise, the moving party could always discharge its burden by summarily

12   concluding the nonmoving party has no evidence.  "[T]o carry its ultimate burden of persuasion

13   on the motion, the moving party must persuade the court that there is no genuine issue of material

14   fact." *Id.* at 1102.  Defendants have not done so here.  They do not direct the court to plaintiff's

15   deposition transcript, for example, or any other material in the record to support their conclusion

16   plaintiff has no evidence.  Defendant has not met its initial burden of production.

17   The court could conclude its analysis here, but it also finds there is a triable issue of fact

18   preventing summary judgment of this claim, assuming defendants' focus is on the underlying

19   Eighth Amendment claim.  "[T]he Bane Act does not require the 'threat, intimidation or coercion'

20   element of the claim to be transactionally independent from the constitutional violation alleged."

21   *See Reese*, 888 F.3d at 1043; *see also Scalia*, 308 F. Supp. 3d at 1084 ("[A] prison official's

22   deliberate indifference to serious medical needs is a coercive act . . . .").  As discussed above,

23   there is a genuine dispute whether defendants violated plaintiff's constitutional rights.  The next

24   question is whether defendants had the specific intent to do so.  "The specific intent inquiry for a

25   Bane Act claim is focused on two questions: first, '[i]s the right at issue clearly delineated and

26   plainly applicable under the circumstances of the case," and second, '[d]id the defendant commit

27   the act in question with the particular purpose of depriving the citizen victim of his enjoyment of

28   the interests protected by that right?'" *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th

25

1  Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803).  If those two requirements are met,

2  "specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of

3  his act' but instead acted in 'reckless disregard' of the constitutional right."  *Id.* (quoting *Cornell*,

4  17 Cal. App. 5th at 803).

5           Defendants argue plaintiff cannot "provide any California caselaw that establishes the law

6  in referral or delays to outside surgery is clearly established."  MSJ at 13.  Specifically,

7  defendants argue the first question of the specific intent inquiry under the Bane Act is akin to the

8  "clearly established" prong of the qualified immunity analysis.  *Id.* at 12–13.  Defendants do not

9  cite nor has the court located any cases drawing this conclusion.  While there are similarities

10 between the two tests, the court declines to adopt defendants' argument and applies the specific

11 intent standard set forth by the California Second District Court of Appeal in *Cornell*, which was

12 adopted by the Ninth Circuit in *Sandoval*.

13          To determine whether a right is clearly delineated and plainly applicable, courts "look to

14 whether there is anything 'vague or novel about [the application of the right] under the

15 circumstances of this case.'"  *Sandoval*, 912 F.3d at 520 (quoting *Cornell*, 17 Cal. App. 5th at

16 803).  The constitutional right at issue is the Eighth Amendment right to be free from deliberate

17 indifference to one's serious medical need.  This right is clearly delineated.  *Estelle*, 429 U.S. at

18 104 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary

19 and wanton infliction of pain proscribed by the Eighth Amendment.").  The court also finds there

20 is nothing novel or vague about the application of the Eighth Amendment right under the

21 circumstances of this case, the gravamen of which is the delay of necessary medical care.  *See*

22 *Hunt*, 865 F.2d at 201 ("Prison officials are deliberately indifferent to a prisoner's serious medical

23 needs when they 'deny, delay, or intentionally interfere with medical treatment.'"); *Jett*, 439 F.3d

24 at 1097 (delaying necessary medical care for reasons unrelated to prisoner's medical needs is akin

25 to deliberate indifference); *cf. Scalia*, 493 F. Supp. 3d at 903 (denying summary judgment on

26 Bane Act claim because "a pretrial detainee's right to be free from deliberate indifference to

27 serious medical needs, is 'clearly delineated and plainly applicable' to the circumstances").  The

court finds the right at issue is clearly delineated and plainly applicable under the circumstances in this case.

The second, factual question -- whether defendants acted with the purpose of depriving plaintiff of her constitutional rights -- is one properly reserved for the trier of fact. *Cornell*, 17 Cal. App. 5th at 803 ("If the trial judge concludes [the right at issue is clearly delineated and plainly applicable], then the jury must make the second, factual, determination."). Accordingly, the court **denies** summary judgment on this claim.

### E.    Intentional Infliction of Emotional Distress (IIED)

Plaintiff brings an IIED claim against defendants Sheriff Jones, Dr. Morin and Nurse Gallagher. FAC ¶ 103. To state a claim for IIED, plaintiff must allege "(1) extreme and outrageous conduct by [defendants] with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal marks and citations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community' [and] the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Id.* at 1050–51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

Defendants argue "there is no evidence Plaintiff had any interactions with defendants, much less provide evidence [sic] that their respective individual conduct regarding Plaintiff rises to the level of extreme and outrageous conduct." MSJ at 14. As with the Bane Act claim, defendants' unsupported conclusion does not persuade the court they have met their initial burden under the summary judgment standard. *See, e.g.*, *Shaposhnikov v. Pacifica Sch. Dist.*, 04-01288, 2006 WL 931731, at *8 (N.D. Cal. Apr. 11, 2006) ("Two sentence paragraph asserting, in conclusory fashion, that there is no evidence to support plaintiff's state law claims . . . is inadequate to meet defendants' summary judgment burden."). Again, defendants do not direct

the court to any material, such as answers to interrogatories or plaintiff's deposition transcript, to support their conclusion plaintiff has no evidence.

Moreover, as explained above, there is a genuine dispute whether defendants were deliberately indifferent to plaintiff's medical needs.  If a jury found in favor of plaintiff, it could find defendants, who were responsible for plaintiff's medical care, were deliberately indifferent to her medical needs and delayed surgery for non-medical reasons and allowed her to languish in severe pain for over a month before releasing her.  On this record, a reasonable jury could find allowing an inmate to suffer severe pain for over a month without necessary treatment and surgery is so outrageous it exceeds the bounds of what is tolerable.  *See Trujillo v. County of Los Angeles*, No. 14-543, 2019 WL 6622853, at *12 (C.D. Cal. Jan. 22, 2019) ("If a jury finds that [defendant] had purposefully delayed or refused medical care, that would be outrageous."); c*f. Estelle*, 429 U.S. at 103 (noting failure to treat prisoner's medical needs may produce physical torture or pain and suffering serving no penological purpose).  The court **denies** summary judgment on this claim.

### F.      Negligence

Plaintiff also makes a negligence claim against defendants Sheriff Jones, Dr. Morin and Nurse Gallagher.  FAC ¶ 109.  To state a claim for negligence under California law, plaintiffs must sufficiently allege "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach [was] the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (emphasis and citation omitted).  A duty to a plaintiff is an essential element which "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter*, 6 Cal. 4th at 985.

#### 1.      Sheriff Jones

Sheriff Jones argues he is entitled to summary judgment because he is entitled to immunity and there is "no evidence [he] had any knowledge of Plaintiff or her medical or mental health needs."  MSJ at 14.  Under California Government Code section 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

1    Cal. Gov't Code § 820.2. Defendant has the burden of establishing he is entitled to immunity.

2    *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012). Defendant cannot

3    meet his burden through his conclusory argument simply that he is entitled to immunity. *See,*

4    *e.g.*, *City ECO Res., Inc. v. City of Rio Vista*, No. 05-2556, 2006 WL 947763, at *3 (finding

5    conclusory argument insufficient to meet burden of showing section 820.2 immunity applies).

6    Similarly, defendant here again has not persuaded the court there is no genuine dispute of

7    material fact by merely concluding plaintiff has no evidence. *See, e.g.*, *Rundgren v. Washington*

8    *Mut. Bank, F.A.*, 09-00495, 2011 WL 13070777, at *3 (D. Haw. Aug. 23, 2011) ("[Defendant]

9    cannot carry its initial burden on summary judgment through mere *argument* that Plaintiffs cannot

10   come forward with evidence to support their claims." (emphasis in original)). As with the Bane

11   Act claim and the IIED claim, defendants do not direct the court to any material to support their

12   mere conclusion that plaintiff has no evidence. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105

13   ("A moving party may not require the nonmoving party to produce evidence supporting its claim

14   or defense simply by saying that the nonmoving party has no such evidence.").

15        The court **denies** summary judgment with respect to Sheriff Jones.

16              **2.**      **Defendants Morin and Gallagher**

17        Defendants argue plaintiff's claim for negligence against Dr. Morin and Nurse Gallagher

18   is redundant of the claim for professional negligence, MSJ at 14, which plaintiff voluntarily

19   dismissed, *see* Opp'n at 25. Defendants also argue a claim for breach of duty against medical

20   professionals requires a breach of standard medical care. Reply at 9. Plaintiff objects and states

21   claims of ordinary negligence are not identical to or redundant of claims of professional

22   negligence. Opp'n at 25. At hearing, plaintiff confirmed she was not dismissing her negligence

23   claim against these two defendants.

24        The California Supreme Court has held, "[a]s to any given defendant, only one standard of

25   care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or

26   alternate theories of liability." *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 998

27   (1994). The standard of care under both ordinary and professional negligence is "ordinary

28   prudence." *Id.* For a professional, determining what constitutes "ordinary prudence" in a

1    particular situation takes consideration of whether the individual exercised the knowledge, skill

2    and care ordinarily possessed by members of that profession.  *Id.*

3        Defendants argue "[p]laintiff cannot establish either Defendant breached any standard of

4    care."  MSJ at 15.  Defendants, again, state a conclusion without directing the court to the record

5    or explaining the basis of their conclusion.  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03

6    ("[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

7    court that there is no genuine issue of material fact.  If a moving party fails to carry its initial

8    burden of production, the nonmoving party has no obligation to produce anything . . . .").

9    Defendants have not met their initial burden.  The court **denies** summary judgment as to these

10   defendants.

11   **VI.    CONCLUSION**

12       For the reasons above, the court **grants in part and denies in part** defendants' motion for

13   summary judgment.  The court specifically orders as follows:

14           1.  Defendants' motion for summary judgment on plaintiff's **first, second, third,**

15               **fifth, sixth and seventh claims is denied**.

16           2.  Defendant's motion for summary judgment on plaintiff's **fourth and eighth claim**

17               **is granted**.

18       In light of the expiration of the dispositive motion deadline, **a final pretrial conference is**

19   **set for July 21, 2023, at 10:00 a.m.**  *See* E.D. Cal. L.R. 282.  The parties shall meet and confer

20   and file a joint pretrial statement no later than **three weeks prior** to the **final pretrial**

21   **conference**.

22       The provisions of Local Rule 281 shall apply with respect to the matters to be included in

23   the joint pretrial statement.  At least one of the attorneys who will conduct the trial for each of the

24   parties shall attend the final pretrial conference.  All motions *in limine* must be filed in

25   conjunction with the joint pretrial statement.  In most cases, motions *in limine* are addressed and

26   resolved on the morning of the first day of trial.  The parties may alert the court at the final

27   pretrial conference and in their final joint pretrial statement that a particular motion or motions

28   should be resolved earlier.  At the final pretrial conference, the court will set a briefing and

1    hearing schedule on the motions *in limine* as necessary.  The parties are reminded that a motion *in*

2    *limin*e is a pretrial procedural device designed to address the admissibility of evidence.  The court

3    looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial

4    in the guise of motions *in limine*.

5        In the meantime, if the parties jointly agree to referral to a court-convened settlement

6    conference with another judge of the court, they may file such request in writing.

7        This order resolves ECF No. 79.

8        IT IS SO ORDERED.

9    DATED:  May 15, 2023.

CHIEF UNITED STATES DISTRICT JUDGE

31